

Jonathan Marc Davidoff, Esq.
Admitted in Florida and New York
Glen A. Kendall, Esq.
Admitted in Connecticut and New York

Aaron R. Resnick, Esq.
Admitted in Florida, of Counsel
Derek A. Schwartz, Esq.
Admitted in Florida, of Counsel

November 8, 2017

**via Email and ECF**
Honorable Colleen McMahon
District Court for Southern District of New York

   Re: *United States v. Craig Carton, et. al.,* 17-cr-00680-CM
    Initial Response to Request

Dear Judge McMahon:

   This Firm represents Defendant Michael Wright in the instant case. This letter is being submitted as an initial response to the Government's letter dated November 7, 2017, which the Government served on the Defendants at 7:42pm on such date. Since the Arraignment in this case is scheduled for 4:00pm today, counsel believed it was imperative that Your Honor had more of the story than what the Government presented in the Government's strategic letter request to prohibit Mr. Wright from retaining the counsel of his choice under the Sixth Amendment. As this letter is intended to merely be an initial response, Mr. Wright respectfully reserves his right to submit a full response with supporting case law to Your Honor for consideration of this matter, if Your Honor does not outright deny the Government's request at this time. Because of the timing of the Government's letter request on the eve of Arraignment, which was intended only to blindside Mr. Wright's counsel, undersigned counsel was not able to fully brief all the issues that are material for Your Honor to render decision, if the Court is not going to dismiss the request outright, and thus it is respectfully requested that undersigned counsel be provided time to formally respond to the Government's letter.

   The Government's request to disqualify undersigned counsel is meritless, overreaching, and is the epitome of the Government's harassment of Mr. Wright. The prosecution of this case can be viewed as nothing more than an abuse of power by the Government. In fact Judge Furman (at the hearing on Mr. Wright's motion for an emergency protective order) stated that Mr. Wright may have a motion to suppress and/or a future Bivens claim for the manner in which the Government illegally obtained Mr. Wright's cellular phone and searched his home without consent and absent a search warrant. Additionally, in the case of the alleged co-conspirator referenced in the Indictment (*United States v. Joseph Meli* 17-crim-00127), Mr. Meli filed a motion to suppress based on prosecutorial misconduct and violation of Rules of Professional Conduct Rule 4.2 (*see* ECF Doc. No. 81 in the *Meli* matter). Additionally, in the instant case, the assigned AUSAs have misled (if not considered blatantly lied to) counsel, FBI agents have lied and concocted stories, and now again in the Government's letter contains contested facts that this Court must find correct and sufficient for disqualification.



**228 East 45th Street**
**Suite 1700**
**New York, NY 10017**
**Tel: 212-587-5971**
**Fax: 212-658-9852**

**Davidoff Law Firm, P.L.L.C.**

**www.DavidoffLawFirm.com**

**100 North Biscayne Blvd.**
**Suite 1607**
**Miami, FL 33132**
**Tel: 305-673-5933**
**Fax: 305-718-0647**

It should be noted that the Government has known that undersigned counsel has represented Mr. Wright on various matters (including the issues related to this case) for several years, as was expressed to the Government on June 20, 2017 when undersigned counsel was inquired of the Defendants in this case. Undersigned counsel specifically advised the Government that he had represented Mr. Wright and had advised him on matters relating to the matters involving Mr. Meli, and undersigned counsel refused to answer many of the Government's questions. In fact, undersigned counsel also advised the Government that he had previously provided legal advice to Mr. Carton as well, but at that time was not representing Mr. Carton. Clearly, the Government knows that an attorney does not own the privilege as it is owned solely by the client, and thus only the client can waive the attorney/client privilege. New York C.P.L.R. 4503(a)(1). Further, waiver of the privilege is highly limited as detailed in F.R.E. Rule 502. In fact, when the Government surprised undersigned counsel with questions relating to the Defendants, undersigned counsel immediately advised the Government that he should not discuss such matters because of the privilege. Now, the Government attempts to use potentially inadvertent disclosed attorney/client privileged statements (which are also taken out of context) to attempt to disqualify counsel because the Government is unhappy that Mr. Wright would not provide an unprotected innocence statement against his Fifth Amendment right to remain silent and would not fabricate testimony to support claims against any other defendant[1].

The Government's disqualification request comes at a very peculiar time, as Mr. Wright was arrested on September 6, 2017, and for the more than 60 days the Government has been actively communicating with undersigned counsel and eliciting information and evidence from him regarding Mr. Wright. In fact, the Government spent over two hours with undersigned counsel during an attorney proffer, and then conducted several follow up conference calls with undersigned counsel continuing the attorney proffer in an attempt to convince the Government that Mr. Wright is innocent and not criminally responsible for any conduct. Then, even after these proffers, and the Government knowing of undersigned counsel's alleged involvement with the instant matter, the Government still attempted to elicit testimony and materials from Mr. Wright. On October 12, 2017, after the attorney proffers were provided pursuant to an agreement that Mr. Wright would provide a statement that under a Queen for a Day letter, Mr. Quigley stated "As we've said more than once, we would be happy to hear from Mr. Wright in person. Elisha is out the rest of this week, and I am traveling for work next Monday through Wednesday, but we are both around next Thursday and Friday. Any meeting would be pursuant to the understandings in the attached agreement, which is the standard agreement we use when a defendant is meeting with us to dissuade us from bringing charges. As we've also said more than once, we would be happy, to the extent you are willing to share them, to look any at emails or other documents or records that you believe support your arguments, and we would look at them with an open mind." Then on October 27, 2017, Mr. Quigley stated "I assume we're still in the same place as far as Mr. Wright coming in for an innocence proffer?" and "Our position is that we would be happy to hear from Mr. Wright in an innocence proffer and would be happy to look at any documents or records you believe establish his innocence." Again, these solicitations

---

[1] After leaving the in person attorney proffer, Mr. Quigley specifically advised undersigned counsel that Mr. Wright needed to "come up with more" and said "he has information about Molner that we want". Such is believed to be a misleading statement because Mr. Wright had no interaction with Mr. Molner, and as alleged in the civil case, it is believed that Mr. Molner is cooperating with the Government in this and in Mr. Meli's case.

were after the Government was provided hours of attorney proffers, which included showing the Government materials (i.e. emails and bank documents) that establishes Mr. Wright's innocence, and months after the Government conducted its meeting with undersigned counsel as a victim to Messrs. Molner and Meli's fraudulent acts.

At no point during these proffers did the Government object to undersigned counsel's representation of Mr. Wright. In fact, the Government desired Mr. Wright to provide an innocence statement without a Queen for a Day letter or any other protections for his statement. Mr. Wright rejected such offer because of his concern that the Government would fabricate, manipulate and/or otherwise take his statements out of context, which is clearly what the Government is doing in its letter to Your Honor. The Government and Mr. Wright were never in any plea negotiations, rather, Mr. Wright asserted his innocence and the Government agreed to hear an attorney proffer and then provide Mr. Wright with a Queen for a Day letter so he could speak to the Government without waiving his Fifth Amendment rights. Unfortunately, the Government did not honor its end of the bargaining and withdrew its offer of the Queen for a Day letter. Thus, all along, the Government has acted in bad faith and made misrepresentations to all involved.

The Government should have raised the issue and brought forth a proper motion to disqualify (not a letter request) upon its discovery that undersigned counsel was a potential witness. Thus, it is Mr. Wright's contention that the Government waived its claim that undersigned counsel should be disqualified on the grounds that he is a witness. A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir. 1988); *Jackson v. J.C. Penny Co.*, 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981). Furthermore, "a motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Catamount Radiology, P.C. v. Bailey*, 2015 U.S. Dist. LEXIS 90137 (D. Vt. 2015).

Also, the Government has conceded in other cases that it has an obligation to bring forth a motion to disqualify at an early stage of a case. *United States v. Gehl*, 852 F. Supp. 1135 (N.D.N.Y.). Finally, as has been ruled on in this District, an unreasonable delay in bringing forth a motion to disqualify is grounds for waiver of the right to move to disqualify by a party. *Siverio v. Lavergne*, 1989 U.S. Dist. LEXIS 3867. Because of the right to a speedy trial, a 60 day delay in bringing forth a motion to disqualify is clearly unreasonable, especially when the Government has conducted itself in a manner that is consistent with waiver (i.e. soliciting and accepting attorney proffers, soliciting innocence proffers, requesting cooperation, etc.) Here, the Government knew all the allegations in its letter request on or before June 20, 2017. Furthermore, the Government, as it conceded in an email sent to undersigned on September 5, 2017 by Elisha Kobre, AUSA, anticipated calling undersigned and possibly undersigned's civil clients in the Molner action as witnesses in Mr. Meli's trial. Thus, there was absolutely no reason for the Government to delay the instant request for disqualification other than for purposes of gaining a tactical advantage over Mr. Wright (delaying his case, obtaining evidence it otherwise would not have, etc.) Thus, the Government should not be rewarded and its request should be denied based on waiver.

The Government contends that undersigned counsel is a potential witness in the instant matter because he was an investor in Meli's Ponzi scheme. However, the Government is wrong in its claim for numerous reasons. First, in the Indictment for which Mr. Wright is charged, the dates of the alleged criminal conduct range from August 2016 to August 2017. The Government, as it has admitted, debriefed undersigned counsel and already knows that the investments undersigned counsel made with Mr. Meli were in 2015 and March 2016, well before the allegations that this case covers. Furthermore, Mr. Meli pled guilty in the case in which undersigned was a victim, which undersigned was identified as a victim and received a victim notification letter in such case. Undersigned counsel did not receive a victim notification letter in the instant case relating to Messrs. Carton and Wright, only the case involving Mr. Meli. Additionally, the Indictment specifically alleges the fraud as to a known hedge fun and involving entities relating to an entity that operates a sports and entertainment venue, totaling $4.6 million. The Indictment does not allege that the Defendants here were involved in Mr. Meli's broader Ponzi scheme, and if the Government did contend such allegation, these Defendants would have been charged in a superseding indictment in Mr. Meli's case, not a separate action. Mr. Wright had no communication with Mr. Molner, and the Adele investment is not relevant to the allegations contained in the Criminal Complaint and/or the Indictment that has been filed in this case. The Government is merely attempting to bootstrap the two cases solely for a tactical purpose to remove undersigned counsel from his representation of Mr. Wright. Thus, undersigned's testimony would have no relevance to instant case.

The Government alleges that undersigned counsel had communications with David Molner, who is currently being sued by undersigned counsel on behalf of his own entity, as well as four other investors of Advance Entertainment, LLC and Joseph Meli. Such is a truthful statement, as there is a pending case in New York Supreme Court against Messrs. Molner and Meli, as well as Advance Entertainment, LLC (the "State Action"). To all the victims (also known as the plaintiffs) in the State Action, Mr. Molner held himself out as Mr. Meli's partner in Advance Entertainment, LLC. Mr. Molner did claim that he drafted contracts for Advance Entertainment, LLC and Mr. Meli for the investments that the plaintiffs in the State Action executed, and such information was provided to the Government by more witnesses than undersigned. Mr. Molner did recruit undersigned counsel and the other plaintiffs in the State Action to invest with Mr. Meli, as well as provided numerous false statements in furtherance of such recruitment. All of the plaintiffs in the State Action can testify to such, and none of them, other than undersigned counsel, knew either of the Defendants herein. However, the Government, as it appears, decided not to criminally prosecute Mr. Molner, for what is clearly his perceived criminal conduct and active involvement in the Ponzi scheme. Regardless, such conduct has nothing to do with undersigned counsel's representation of Mr. Wright as Mr. Molner's involvement was not part of Mr. Wright's conduct, but rather part of the scheme. Most importantly, the Government's assigned attorneys are very smart and well educated in the Federal Rules of Evidence, specifically hearsay. As the Government knows, any statements made by Mr. Molner to undersigned counsel cannot be used against the Defendants here, as such is hearsay and not covered by any exceptions to the hearsay rule[2]. Furthermore, undersigned counsel is well aware of the unsworn witness rule, and all protections would otherwise be

---

[2] Of course an admission would be an exception to the hearsay rule, but if that admission is protected by a privilege then the statement cannot be elicited without a waiver of the client.

implemented to ensure that the rule is followed, including potentially co-counsel handling Mr. Molner if he was to become a witness.

In its letter, the Government describes two sets of conversations that undersigned counsel had with Mr. Carton that the Government believes are grounds for disqualification, which are contested and Your Honor should consider through a formal motion process and a hearing. And, again, the investments undersigned counsel made in 2015 and March 2016 are wholly irrelevant to the case at hand and are being used by the Government as a pretextual basis for disqualification. If the Court would permit this testimony, then the Court would be opening the flood gates to wholly irrelevant testimony in all of its cases, and there should be grounds for disqualifying the prosecutors in almost every case as almost every prosecutor would be deemed a witness of one kind or another.

Disqualification under New York's advocate-witness rules applies only when the attorney-witness actually serves as trial counsel. *John Wiley & Sons Inc. v. Dog Books, LLC*, 126 F. Supp.3d 413, 420 (S.D.N.Y. 2015); *See also* N.Y. Rules of Prof Conduct, Rule 3.7(a); *Corrado v. N.Y. State Unified Court Sys.*, 2014 WL 119407, at *2 (E.D.N.Y. Jan. 10, 2014) (citing *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir.2009); *Finkel v. Frattarelli Bros., Inc.*, 740 F.Supp.2d 368, 373 (E.D.N.Y.2010)). Further disqualification may be required only when it is likely that the testimony to be given is necessary. *John Wiley & Sons Inc. v. Dog Books,* 126 F. Supp. 3d at 420; *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.,* 69 N.Y.2d 437, 445–46, (1987). Also, ABA Rule 3.7 specifically states that "a lawyer shall not act as an advocate **at a trial** in which the lawyer is likely to be a **necessary** witness unless..." Then, New York Rule 3.7 provides that "a lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is **likely** to be a witness on a **significant issue of fact** unless..."NY CLS Rules Prof Conduct R 3.7. Undersigned counsel is neither a necessary witness, nor is a trial presently being conducted. Furthermore, undersigned counsel is not likely to be a witness, nor would he be a witness on a significant issue of fact. Undersigned counsel is not an alleged victim of either of the Defendants, he was not a party or knowledgeable of any of either of the Defendants' alleged conduct in the instant action, nor does undersigned counsel have any relevant testimony as to the facts that would be required or even helpful to establish any of the elements of the crimes charged in the Indictment by the Government. Thus, calling undersigned counsel as witness would be solely for the tactical purpose of attempting to disqualify him as counsel for Mr. Wright.

Additionally, where only the moving party intends to call the adversary's attorney as a witness, "the movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.' " *John Wiley & Sons Inc. v. Dog Books,* 126 F. Supp. 3d at 420. Necessity is determined by consideration of factors such as "the significance of the matters, the weight of the testimony, and the availability of other evidence;" *Paramount Communications, Inc. v. Donaghy,* 858 F. Supp at 394; *Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*, 2002 U.S. Dist. LEXIS 20188, 2002 WL 31387484 at *2 (S.D.N.Y. Oct. 22, 2002).

Furthermore, disqualification of an attorney under the unsworn witness doctrine is a drastic remedy imposed only where there is a danger that continued representation will impair

the fact finding process or prejudice the prosecution. *US v. McDonald*, 2002 WL 31056622 (E.D.N.Y. 2002). In order to prevail on this theory, the Government cannot rely on mere allegations of the attorney's involvement (*see Weil v. Long Island Savings Bank*, 200 F.R.D. 164, 174 (E.D.N.Y.2001)) but rather, must show that the attorney has "first-hand knowledge of the events presented at trial." *See United States v. Locasio*, 6 F.3d 924, 933 (2d Cir. 1993). Furthermore, "[b]ecause courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions" under the witness-advocate rule. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). The Government here "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Id.* "Prejudice" in this context means testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.*

The Government will be unable to meet its burden to establish any of the elements for disqualification of undersigned counsel as a witness in the instant action. And, surely, the Government must concede that in a case such as this one, where Mr. Wright has two attorneys representing him (both undersigned and Mr. Kubilun), disqualification on the grounds that undersigned may be a witness at trial on some trivial issue is improper at this juncture as undersigned surely can continue in his representation of Mr. Wright throughout the process of pretrial matters, including discovery, dispositive motions, and even pretrial motions at a bare minimum. Until such time that the Government articulates concrete claims that undersigned counsel has relevant and material testimony to testify and he likely to be called as a witness, such relief should be denied outright.

As to the Government's contention that undersigned counsel was involved in Mr. Carton's charity, such is wholly irrelevant as well. Undersigned counsel was a co-chairperson for a charity golf outing with an individual ("Individual") who works for the alleged victim in the case, a hedge fund. The Indictment does not contend that any individuals are victims, rather it alleges that the hedge fund is the alleged victim of the fraud. Furthermore, undersigned counsel and Individual had minimal communications with one another, limited to approximately ten group emails over the course of two years received by undersigned counsel from Individual (all regarding the golf outings and nothing related to any of the allegations in the Indictment or even in Mr. Meli's case). Undersigned counsel has no testimony to provide to the Government or the Defendants relating to Individual, the hedge fund, the company that operates the New York sports and entertainment venue, or any of the allegations in the Indictment.

The argument the Government raises, which is the central issue in its request for disqualification, is that the Government is concerned that discovery obtained in this case may be used in other matters. Specifically, the Government is concerned that evidence obtained in this case will be used in the State Action, and is why the Government has made enormous efforts over the past two days to silence Mr. Wright and his defense team. First, (as detailed and argued against in a separate letter submitted to Your Honor, ECF Doc. No. 22), the Government desires a blanket protective order designating any and all discovery obtained in this case to be deemed "confidential" and not shared with anyone outside of this case or used for any other matter. Second, the Government's argument that it is concerned that discovery and information obtained

in this case may be shared with the clients in the State Action is also meritless and should not the concern of the Government as this is Mr. Wright's entitlement to defend and investigate his case as he sees fit.  Mr. Wright does not have the ability, nor should he, to tell the Government how it should investigate and prosecute its case.  Furthermore, the Government should be happy that victims (the plaintiffs in the State Action) are seeking to recover civilly for the fraud that was committed against them by those defendants in such action (this is what the SEC is doing in its civil action with the assistance of the Government).  If Mr. Wright and the plaintiffs in the State Action desire to share resources and exchange information to support their respective cases, why should such be of concern to the Government (of course with the understanding that if the Court does issue a protective order such would be honored by undersigned counsel).  However, what appears to be driving force here is that the Government is trying to protect someone(s) and prevent the attack of that individual(s).  Otherwise, the Government would be extremely happy to see victims made whole, even if by am uncharged coconspirator.

The Government is well aware that David Kubiliun, Esq. is entering an appearance in the instant matter as co-counsel with undersigned counsel for Mr. Wright upon his swearing in to this Court[3].  Mr. Kubiliun is an experienced criminal defense attorney in Florida, who is also admitted to practice law in the State of New York (with his application for admission approved and admission swearing in scheduled for December 5, 2017, for this Court).  Thus, if at a later time the Government obtains the sufficient evidence that undersigned counsel is going to be a necessary witness of relevant testimony, then the issue of disqualification can be raised at that time and this Court then can decide whether disqualification is proper, as there is no basis at this time for disqualification.

A defendant's right to be represented by counsel of his own choice is too important to be denied on the basis of a mere, though substantial, possibility that his lawyer will be a witness. *United States v. Castellano*, 640 F. Supp. 1137, 1150 (S.D.N.Y. 1985); *See also United States v. Cunningham*, 672 F.2d. 1064 (2d Cir. 1982). Further, motions to disqualify counsel, in particular under the advocate-witness rule, are viewed with disfavor because of their interference with a defendant's right to choose his own counsel and their strong potential for abuse. *United States v. Locascio*, 357 F. Supp.2d. 536, 553 (E.D.N.Y. 2004); *See also Paramount Communs. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) ("Disqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of the "strong potential for abuse" when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel.")  Finally, the American Bar Association Informal Opinion 89-1529 states, "a lawyer who anticipates testifying as a witness on a contested issue at a trial may represent a party in discovery and other pre-trial proceedings provided: (1) the client consents after consultation; and (2) the lawyer reasonably believes that the representation will not be adversely affected by the lawyer's own interest in the expected testimony."

Courts have held that where a conflict arises or there is a potential conflict and there is a co-counsel relationship, such co-counsel relationship will assist in resolving such potential conflict.  The Government is guessing and throwing a Hail Mary at this Court in its attempt to

---

[3] A request was made earlier today to have Mr. Kubiliun sworn in either pro hac vice or his swearing in be accelerated to prior to the Arraignment today.

disqualify undersigned counsel. In its letter, the Government reaches for potential testimony that undersigned counsel may provide to a jury as either a sworn or unsworn witness. The Government's basis for disqualification is wholly pretextual, and an attempt to muddy the waters on this Arraignment day and distract the public from the truth of the Government's persecution of Mr. Wright. The Government's attempt to disqualify undersigned counsel at this time is made in vein and should be denied because such hypothetical testimony is either not relevant, not necessary, not likely to be elicited, and would only be obtained for the improper tactical maneuver of attempting to disqualify undersigned counsel as Mr. Wright's attorney in this case.

Finally, Mr. Wright anticipates filing a Motion to Sever his case for trial purposes from Mr. Carton's trial in the near future. As the Government was advised, Mr. Wright passed a polygraph examination that supports his assertion that he is innocent of the allegations asserted in the Indictment. Furthermore, Mr. Wright believes that Mr. Carton would testify to facts that would exculpate Mr. Wright, and such can only be accomplished after Mr. Carton's case is completed (either by plea, trial, or Government motion of nolle prose)[4]. Upon conclusion of Mr. Carton's case, Mr. Wright believes that Mr. Carton will testify in Mr. Wright's case and such testimony would produce evidence that Mr. Wright is innocent of the claims asserted against him[5].

The crux of the Government's case is that it contends that Mr. Wright knew that the money that was in the bank account that he effectuated wires in December 2016 was to be used by Mr. Carton to purchase tickets for a ticket investment. However, as was proffered to the Government and supported with documents, Mr. Wright believed that the funds were (a) a loan from the hedge fund that Mr. Carton personally guaranteed and (b) part was the return of funds from a successful gambling trip that Mr. Carton took at the end of November 2016. The state of mind and Mr. Wright's knowledge is crucial for the Government to establish at trial, and/or for Mr. Wright to establish at trial to convince the jury of his innocence. Since only Mr. Wright and Mr. Carton were aware of what Mr. Wright knew about these funds[6]. Additionally, others who were involved with the New York company that operated the sports and entertainment venue have stated that they had discussions and meetings with Mr. Carton, and that they were unaware of Mr. Wright's involvement. The reason for this is that Mr. Wright was not involved in any of the alleged criminal conduct, as he is innocent of the charges in the Indictment.

---

[4] This assertion does not mean that Mr. Carton is guilty of the charges brought in the Indictment, rather contrary to such contention. Mr. Carton is the one who is claimed in the Criminal Complaint to have had all the communications with the alleged victims and parties involved in the transfer of the monies, and thus he is the *only* person who can testify as to what Mr. Wright knew or did not know as to funds in question, and thus would exonerate Mr. Wright of all criminal liability. Again, it is believed that Mr. Carton has an explanation for such funds, and because of his right to remain silent under the Fifth Amendment, he is not able to be compelled to testify until his case has concluded, at which time it is believed that Mr. Carton would testify consistently with Mr. Wright's contention that the funds in the account were a loan to Mr. Carton that he was permitted to use to pay off debts, including gambling debts (which was one of the proposals presented by Mr. Wright in the email cited by the Government).

[5] Mr. Carton's counsel stated that a commitment by Mr. Carton at this time to testify at Mr. Wright's trial is premature for various reasons, including the fact that he is unaware of the trial order)

[6] The attorney for the New York company that operates the sports and entertainment venue, where the funds in question came from, has already proffered to undersigned counsel that no one at the company and involved in this matter has any knowledge of Mr. Wright and that he was not involved in their discussions.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852

Furthermore, other than Mr. Wright, who fully intends on testifying at trial in his own defense, there are no other witnesses that could possibly testify in support of Mr. Wright's state of mind and knowledge regarding the funds in question, other than Mr. Carton. As the Government has conceded numerous times, the case against Mr. Wright is one of circumstantial evidence, which the Government seeks to obtain a conviction based on guilt by association. The Government has no witnesses to testify what Mr. Wright knew of the criminal activity alleged in the Indictment, and no testimony will be elicited that Mr. Wright had communications with anyone with the intention to defraud them based on the claims asserted in the Indictment[7]. Rather, the Government intends on claiming that Mr. Wright knew what Mr. Carton was doing and what Mr. Carton knew through misinterpretation of emails that are wholly taken out of context and trying to obtain a guilty verdict through guilt by association. Therefore, only Mr. Carton can testify that Mr. Wright was unaware of the issues surrounding the funds that are the subject of the wire transfers at issue in the Indictment. Thus, Mr. Wright's case is proper for severance, which would also make any disqualification moot.

Statements by undersigned counsel at trial are not a basis that this Court should worry about for purposes of disqualification, and if such were a concern of this Court then all of the assigned Assistants with the United States Attorney's Office on this case and every criminal prosecution case should be disqualified as they have all had discussions with most, if not all, of the witnesses that the Government presents at trial before such witnesses take the stand. Furthermore, undersigned counsel knows the limitations of what is permitted to be stated to a jury in opening and closing remarks, and such is limited to what is anticipated to be the evidence in opening statements and then what was the evidence in closing statements. Therefore, such argument by the Government that undersigned counsel would act as an advocate and witness at the same time is meritless.

If this Court is contemplating the Government's letter request any further, this Court should have the matters fully briefed by the parties (as this is not a complete submission based on the inadequate time that counsel was provided because of the Government's late night filing), and conduct a proper hearing on the matters. Regarding the Government's request for this Court to conduct a *Curcio* hearing, even though it is believed that the Government is merely trying to harass Mr. Wright, Mr. Wright will consent to such hearing if this Court deems such necessary.

Clearly, after more than 60 days of representing Mr. Wright in this action, he will be severely prejudiced by undersigned counsel being disqualified as a defense plan has been organized and started to be implemented. Mr. Wright thanks the Court for its attention to this matter and appreciates the opportunity to further brief these issues and be heard if Your Honor decides to further entertain such request by the Government.

Respectfully submitted,
/JMD/
Jonathan Marc Davidoff, Esq.
cc:  All parties of record via ECF

---

[7] This has been confirmed with counsel company that operates the sports and entertainment venue.

DAVIDOFF LAW FIRM, PLLC
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852