

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 7, 2017

**TO BE FILED UNDER SEAL**
Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *United States* v. *Craig Carton and Michael Wright*, **17 Cr. 680 (CM)**

     In connection with the arraignment scheduled for tomorrow at 4:00 p.m., the Government respectfully submits this letter to advise the Court of facts that may bear on the ability of Jonathan Davidoff, Esq. to represent defendant Michael Wright in this case.  First, Mr. Davidoff may have personal knowledge of facts relating to the charges in the above-referenced indictment, and may therefore become a sworn or unsworn witness[1] at trial.  Second, Mr. Davidoff has a potential conflict of interest in that, among other things, he has filed a lawsuit against an uncharged individual, on behalf of himself and others, alleging that he and his fellow plaintiffs are victims of the same scheme alleged in the Indictment.  Mr. Davidoff was also associated with a charity run by defendant Craig Carton and co-chaired an event for that charity with a principal of the hedge fund defrauded by the defendants.

     In light of the these issues, the Government respectfully requests that the Court conduct an inquiry to determine whether Mr. Davidoff's potential role as a sworn or unsworn witness at trial requires that he be disqualified from representing Mr. Wright or, alternatively, whether protective measures should be taken to ensure that Mr. Davidoff's continued representation will not result in his becoming a sworn or unsworn witness.  In the event that the Court determines that disqualification is not required, the Government submits that the Court should then conduct a hearing pursuant to *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982) to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation.

---

[1] As set forth below, the term "unsworn witness" refers to a participant in a proceeding, such as an attorney, who has first hand knowledge of the events presented at trial and, although not called as a witness, may nevertheless seek to relay a personal recollection of the events at issue to the jury.

**Factual Background**

**A. The Indictment**

The Indictment alleges that Carton, Wright, and a co-conspirator, Joseph Meli (who is described in the Indictment as CC-1),[2] participated in a conspiracy, from at least in or about August 2016 through in or about August 2017, to solicit, through false representations, individuals and entities to invest in and finance the bulk purchase of tickets to live events, which would be re-sold at a profit on the secondary market. After receiving investor funds based on misrepresentations, the three misappropriated those investor funds, using them to, among other things, pay personal debts and repay prior investors as part of a Ponzi-like scheme. (Indictment ¶¶ 11-12). One of the entities used to conduct the fraudulent scheme is referred to in the Indictment as the "CC-1 Entity." (Indictment ¶ 7, described herein as the "Meli Entity").

**B. Mr. Davidoff's Personal Knowledge of the Events Described in the Indictment**

In the summer of 2017, after Joseph Meli was arrested on a separate indictment but before the present charges were brought against Wright and Carton, Mr. Davidoff was interviewed by the Government and provided information concerning his own investments in the same scheme described in the Indictment as well as his personal interactions with Meli, Carton, and Wright. In addition to meeting with the Government in his personal capacity, Mr. Davidoff represented two other investors in the ticket business, who also met with the Government in the summer of 2017 (the "Davidoff Clients").

Based on those interviews and other investigative steps, the Government has learned that Mr. Davidoff twice invested with Meli in the purchase of bulk tickets, in or about May 2015 and again in or about March 2016.[3] Each time, Mr. Davidoff wired his investment to the Meli Entity described in the Indictment in this case. According to Mr. Davidoff, his investments in the ticket resale scheme were solicited by an individual named David Molner, who Mr. Davidoff understood to be working with Meli. However, in connection with his investments, Mr. Davidoff also communicated with Meli via e-mail and by phone.

In or about February 2016, Mr. Davidoff told defendant Carton that he was investing with Meli and asked whether Carton knew Meli. According to Mr. Davidoff, he and Carton know each other through Mr. Davidoff's work for a charity run by Carton (the "Charity"). Mr. Davidoff has also served as co-chair of an event for the Charity together with a principal of the hedge fund that, as alleged in the Indictment, was victimized by the scheme. In response to Mr. Davidoff's

---

[2] Meli pled guilty on October 30, 2017 to one count of securities fraud for his participation in the scheme. *See United States* v. *Joseph Meli*, S1 17 Cr. 127 (KMW).

[3] While the Indictment alleges that the conspiracy involving the defendants charged in this case began in or about August 2016, at least one of the participants, Joseph Meli, participated in the same scheme from at least in or about 2015.

February 2016 inquiry about Meli, Carton stated that he (1) knew Meli, (2) didn't know about the investment opportunity offered by Meli, and (3) that Meli was a good guy.

After Meli was arrested on January 27, 2017, Mr. Davidoff participated in a conversation with Carton, Wright, and at least one other individual who, like Mr. Davidoff, had been solicited by Molner to invest with Meli.  During this conversation, Carton stated that he had obtained from Molner contracts reflecting agreements by entertainment companies to sell bulk tickets to Carton or Meli – i.e., demonstrating that Carton and/or Meli had access to bulk tickets – and investment contracts for use in signing up investors.  In a conversation with Molner following Meli's arrest, Molner told Mr. Davidoff, in substance and in part, that he would not be surprised if Carton was involved in the scheme for which Meli was charged.

In or about the summer of 2017, before the arrests in this case, Mr. Davidoff filed a civil action against Molner in New York State Supreme Court, on behalf of himself and the Davidoff Clients, for fraud based upon alleged false representations made to him and others by Molner in soliciting investments in the ticket resale scheme.

Mr. Davidoff's previous relationships and interactions with the defendants and other relevant persons in this case, including his having invested in the very scheme at issue, raise (i) the potential that Mr. Davidoff could become a sworn or unsworn witness at trial and (ii) a potential conflict of interest with respect to his representation of Wright.

## I.   The Need To Explore Disqualification Based On Mr. Davidoff's Status As A Potential Sworn or Unsworn Witness

### A.   Applicable Law

Disqualification is required where an attorney is in fact, or is in a position to become, either a sworn or unsworn witness at trial.  *See, e.g.*, *United States* v. *Kliti*, 156 F.3d 150, 156 (2d Cir. 1998)) ("When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony.").  An attorney who is actually called as a witness at trial should generally be disqualified because, *inter alia*, ethical codes otherwise generally require the attorney to withdraw his or her representation.  *See id.* at 156, n.8 (citing Model Code of Professional Responsibility DR 5-102(A)); *United States* v. *Locascio*, 6 F.3d at 933 (2d Cir. 1993) (same); New York Rules of Professional Conduct, Rule 3.7 ("Lawyer as Witness").  A district court may properly disqualify an attorney where the Government represents that it is merely possible that the attorney will be a witness at trial.  *See United States* v. *Jones*, 381 F.3d 114, 121 (2d Cir. 2004) ("The risk that [the attorney] would become a witness at trial was enough alone to allow the district court to [disqualify the attorney] under an abuse of discretion standard.  We could not expect the district court to rule otherwise where it seems more likely than not that a number of conflicts will materialize.").

Furthermore, even where an attorney is not actually called as a sworn witness, disqualification is proper where the attorney is nonetheless in the position of serving as an unsworn witness.  "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial."  *United States* v. *Locascio*, 6 F.3d at

933.  In such circumstances, an uncalled attorney "can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question.  For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination."  *Id.*; *see also Ciak* v. *United States*, 59 F.3d 296, 305 (2d Cir. 1995) ("[An attorney's] arguments to the jury about [a witness's] prior statements would be viewed as a statement of a witness as well as of an advocate – thereby creating a conflict severe enough to require [the attorney's] disqualification."); *United States* v. *McKeon*, 738 F.2d 26, 34-35 (2d Cir. 1984) ("If counsel were to cross-examine the witness as to her conversations with him, argue the credibility of her testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue. . . . [T]he Sixth Amendment interest in counsel of choice must give way when chosen counsel is so compromised.").  And because the Government, not the defendant, is prejudiced when a defense attorney becomes an unsworn witness, "[w]aiver by the defendant is ineffective in curing the impropriety in such situations."  *United States* v. *Locascio*, 6 F.3d at 934.

**B.  Discussion**

Mr. Davidoff's personal knowledge of events and discussions relating to the charges in the Indictment poses a substantial risk that he will become a sworn or unsworn witness at trial. This may occur in multiple foreseeable ways, and likely in even more ways that may not be clear at this early juncture in the case.  Either defendant may wish to elicit from Mr. Davidoff information regarding his interactions and conversations with Meli and/or Molner regarding the scheme, in an effort to deflect responsibility from their own involvement in the scheme.   In addition, the Government may wish to elicit from him statements he heard directly from Carton, as described above, concerning Carton's relationship with Meli and knowledge of the scheme.

Moreover, given Carton's statements to Mr. Davidoff that Molner provided Carton with various contracts used to further the scheme, it is entirely plausible that Molner will be called as a witness at trial, by one or both of the defendants, or by the Government.  Given Mr. Davidoff's numerous personal interactions and conversations with Molner relating to Mr. Davidoff's investment in the ticket scheme, Mr. Davidoff would then become a prime unsworn witness at trial. *See United States* v. *McKeon*, 738 F.2d at 34-35 ("If counsel were to cross-examine the witness as to her conversations with him, argue the credibility of her testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue. . . . [T]he Sixth Amendment interest in counsel of choice must give way when chosen counsel is so compromised.").

Accordingly, the Government respectfully submits that the Court should consider whether disqualification of Mr. Davidoff is necessary based on his status as a potential sworn or unsworn witness.

## II. **Conflict of Interest**

### A. **Applicable Law**

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* inquiry to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

Three types of conflicts of interest are the subject of judicial inquiry and can potentially result in the deprivation of the effective assistance of counsel: (1) a per se conflict; (2) an actual conflict; and (3) a potential conflict that results in prejudice to the defendant. *See Armienti* v. *United States*, 313 F.3d 807, 810 (2d Cir. 2002); *United States* v. *John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001).

In the Second Circuit, per se conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." *Armienti* v. *United States*, 234 F.3d 820, 823 (2d Cir. 2000); *accord United States* v. *Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *see also United States v. John Doe No. 1*, 272 F.3d at 125 ("we have limited per se conflicts to [these] two instances").

An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of action." *United States* v. *Schwarz*, 283 F.3d at 91 (applying standard derived from *Cuyler* v. *Sullivan*, 446 U.S. 335 (1980)). To show divergent interests, "[s]peculation is not enough." *Triana* v. *United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens* v. *Taylor*, 535 U.S. 162, 171 (2002).

Conflicts that do not fall into the categories of per se conflicts or actual conflicts are described as potential conflicts. *See, e.g., Armienti* v. *United States*, 234 F.3d at 824. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States* v. *Kliti*, 156 F.3d at 153 n.3). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *United States* v. *Perez*, 325 F.3d at 125. However, "such a conflict might require a

defendant to abandon a particular defense or line of questioning," and the defendant must "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." *Id.* (quoting *United States* v. *Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id.*

> The Second Circuit has set forth the requirements for a *Curcio* procedure in great detail:
>
> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk[s] of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

Given that "[c]onflicts of interest are notoriously hard to predict . . . , even for those intimately familiar with those proceedings," it is important for "district courts [to] have latitude to permit or deny a defendant's waiver of such conflict." *United States* v. *Jones*, 381 F.3d at 120; *Wheat*, 486 U.S. 153, 162-63 (1988) (explaining that because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict . . . the district court must be allowed substantial latitude in refusing waivers of conflicts not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"). Accordingly, even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver. *See Jones*, 381 F.3d at 121; *United States* v. *Rahman*, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 1994) (stating that judicial assessment "must include . . . both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts"). A district court's decision to disqualify defense counsel is reviewed on appeal "only for an abuse of discretion." *Locascio*, 6 F.3d at 931.

### B. Discussion

Mr. Davidoff's representation of Wright presents potential conflicts of interest. Perhaps most obviously, Mr. Davidoff stands to reap financial gains if he prevails in his state court fraud action against Molner relating to the exact scheme at issue. This direct personal interest may bias Mr. Davidoff in his strategy. For example, Mr. Davidoff may be dissuaded by his financial interest to present a defense that no criminal scheme existed – even as to Meli or Molner – as proving that point would substantially undermine his own suit. Indeed, because Mr. Davidoff himself is a party to that suit, he may understandably be on guard not to say anything during the trial which could be

used to impeach him during in the civil suit, placing an obvious restriction on his motivations to be a zealous advocate for his client.  These concerns are only heightened if Molner is called as a witness in this case.  Indeed, Mr. Davidoff might be personally motivated to call Molner as a defense witness to question him and gain an advantage in his civil suit, even if calling him could operate as a disadvantage to his client.  Additionally, Mr. Davidoff apparently worked together with Wright's co-defendant, Carton, on the Charity, and has participated in co-chairing an event for the Charity with a principal of the hedge fund that was a victim of the scheme charged in the Indictment.  These relationships create at least a potential conflict of interest requiring a *Curcio* hearing.  Further, under the Rules of Professional Conduct, Mr. Davidoff generally cannot disclose confidential information he has learned while representing the Davidoff Clients, even to other clients, such as defendant Wright.  *See* N.Y. Rules of Professional Conduct, Rule 1.6.

## Conclusion

In sum, Mr. Davidoff has a multifaceted relationship with the defendants, coconspirators, victim, and events at issue in this case.  There is a substantial possibility that Mr. Davidoff may become a sworn or unsworn witness at trial as a result of his personal knowledge of facts relevant to the charges in this case.   Moreover, Mr. Davidoff has a potential conflict of interest arising from (1) Mr. Davidoff's prior relationship with Carton and interactions with at least one potential witness in this case; and (2) Mr. Davidoff's potential personal financial stake arising from his state court action against Molner, a potential witness in this case, which may bias Mr. Davidoff's strategy regarding Molner.

Accordingly, the Court should conduct an inquiry to determine whether Mr. Davidoff may become a sworn or unsworn witness at trial requiring that he be disqualified from representing Mr. Wright or, alternatively, whether protective measures may be taken to ensure that Mr. Davidoff's continued representation will not result in his becoming a sworn or unsworn witness.  Moreover, should the Court determine that Mr. Davidoff can continue to represent Wright, the Court should conduct a hearing pursuant to *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982) to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation.[4]

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: _____/s/_____
Elisha Kobre/Brendan Quigley
Assistant United States Attorney
(212) 637-2599/2190

cc: All Counsel of Record

---

[4] The Government also respectfully requests that this letter be filed under seal because it contains information provided to the Government by Mr. Davidoff as a potential victim/witness in this matter and references other individuals by name who were involved in the events in question.