UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -                                        **17 Cr. 680 (CM)**

CRAIG   CARTON   and   MICHAEL
WRIGHT,

                Defendants.

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO QUASH RULE 17 SUBPOENAS**

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Elisha J. Kobre
Brendan F. Quigley
Assistant United States Attorneys
    *Of Counsel*

The Government respectfully submits this memorandum of law in support of its motion to quash Rule 17(c) subpoenas that counsel for defendant Michael Wright has served on at least three sets of third parties, which purport to be returnable on Saturday, November 18. The Court should quash the subpoenas for three independent reasons. First, the subpoenas are procedurally improper. Despite not having been so-ordered by the Court, the subpoenas require production before trial—indeed before any trial date has even been set in this case. Second, the substance of the subpoenas shows they are the type of broad "fishing expeditions" that courts have repeatedly found improper in the Rule 17 context. Finally, Wright has not demonstrated that the subpoenas are necessary because, to the extent they seek relevant material, much of that material will be produced by the Government in discovery.

In addition, the Government respectfully requests that the Court stay compliance with any additional Rule 17(c) subpoenas, beyond those specifically identified herein, that defendant Wright has issued without order of the court, pending further briefing on the propriety of those subpoenas.

## BACKGROUND

This past week, the Government learned that Wright had served a Rule 17(c) subpoena on the entity identified as the Hedge Fund in the Indictment in this case ("the Hedge Fund Subpoena") and three separate Rule 17 subpoenas on an individual who may be a witness at trial in this case and who counsel for defendant Wright is currently suing in New York State Supreme Court (the "Individual-1 Subpoena"), an entity associated with Individual-1 ("the Individual-1 Entity Subpoena"), and the law firm representing Individual-1 ("the Individual-1 Law Firm Subpoena" and collectively with the Individual-1 Subpoena and the Indiviudal-1 Entity Subpoena, the "Individual-1 Subpoenas"). The Government has obtained copies of the Hedge Fund Subpoena and the Individual-1 Subpoenas and will provide them to the Court under separate cover.

The Hedge Fund and Individual-1 Subpoenas are all dated either October 25, 2017 or October 27, 2017.  They seek the return of documents to counsel for defendant Wright at 9:00 a.m on November 18, 2017—a Saturday.  The Hedge Fund and Individual-1 Subpoenas bear the name of the Clerk of the Court and what appears to be the signature of a deputy clerk.  None of the subpoenas, however, appear to be endorsed or so-ordered by a Judge of this Court.

The subpoenas are extremely broad.  Each of the subpoenas contains over 40 defined terms. The Hedge Fund Subpoena includes 15 sets of document requests, each of which is prefaced by the phrase "any and all."  For example, the Hedge Fund subpoena seeks seeking "[a]ny and all Documents and/or Communications, including but not limited to e-mails, text messages and all other materials between [the Hedge Fund] and [defendant Carton] relating to" over 30 different individuals, entities or topics.  (Hedge Fund Subpoena Document Request 1).  The Hedge Fund Subpoena also makes similar requests for "any and all Documents and/or Communications" between (i) the Hedge Fund and (ii) defendant Wright, the individual identified as CC-1 in the Indictment, the entity identified as the CC-1 Entity in the Indictment, and Individual-1.  (Hedge Fund Subpoena Document Requests 2 through 5).  The Hedge Fund Subpoena also makes four sets of requests for "[a]ny and all Documents and/or communications" between the (i) the Hedge Fund and (ii) "the Prosecution," one of the FBI agents assigned to this case, and each of the individual Assistant United States Attorneys on the case.  (Hedge Fund Subpoena Document Requests 6 through 8).   The Hedge Fund Subpoena also makes broad requests related to communications between the Hedge Fund and other entities or individuals.  (*See, e.g.*, Hedge Fund Subpoena Document Request 13 (seeking "Any and all Documents and/or Communications

between [the Hedge Fund] *and any person* relating about [sic]" six different topics, individuals, or entities (emphasis added))).

The Individual-1 Subpoenas contain even more broadly worded requests. The Individual-1 Subpoena itself includes 25 sets of requests, each of which is prefaced by "Any and all Documents and/or Communications," "Any and all drafts," or "Any and all Documents." The Individual-1 Entity Subpoena and the Individual Law Firm Subpoena also each include over two dozen broad, "any and all"-style requests.

In addition, the Government previously learned that counsel for defendant Wright served a subpoena on the entity identified in the Indictment as the Sports and Entertainment Company. Although the Government has not obtained a copy of the Sports and Entertainment Company Subpoena, it understands from discussions with counsel for the Sports and Entertainment Company that the Sports and Entertainment Company Subpoena also requires return of the requested materials on November 18, does not appear to have been so-ordered by a judge, and contains requests of similar scope and breadth to the Hedge Fund Subpoena and the Individual-1 Subpoenas.

## ARGUMENT

### A.  Relevant Law

Rule 17(c) governs the issuance of trial subpoenas in criminal cases. A subpoena issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).

The Rule provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *Id.* To require production of documents before trial, a Rule 17(c) subpoena must be so-ordered by the Court. *See, e.g.*, *United States* v. *Ferguson,* 37 F.R.D. 6, 7–8 (D.D.C. 1965) ("In order to prevent the Rule from being improvidently used[,] the return day of the subpoena may be designated in advance of the trial date, only if the Court so directs or permits."); *see also United States* v. *Beckford*, 964 F. Supp. 1010, 1020-21 (E.D. Va. 1997) (explaining that the "'may direct' language" in Rule 17(c) "confers judicial discretion to determine the time of production 'prior to the trial.' That, of course, affords the court authority to decide whether production before trial is permissible at all, and, if so, when.") (quoting Rule 17(c)); *United States* v. *Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952) ("There must be a showing of good cause to entitle the defendant to production and inspection of documents under Rule 17(c).").

It is also axiomatic that "Rule 17 was not intended to provide an additional means of discovery" to a defendant in a criminal case. *Bowman Dairy Co.* v. *United States,* 341 U.S. 214, 220 (1951). As such, Rule 17 subpoenas "are held to a strict standard" developed by the Supreme Court in *United States* v. *Nixon*, 418 U.S. 683 (1974): "a Rule 17(c) subpoena 'should not issue unless it meets (1) relevancy; (2) admissibility; and (3) specificity.'" *United States* v. *Johnson*, No. S5 10 Cr. 431 (CM), 2013 WL 3948454, at *1 (S.D.N.Y. July 24, 2013) (quoting *Nixon*, 418 U.S. at 700)). "Ultimately, the proponent of the subpoena must make a showing that the application is made in good faith and not intended as a general 'fishing expedition.'" *Id.* (quoting *Nixon*, 418 U.S. at 699-700).

4

**B.  Discussion**

The Court should quash the Hedge Fund Subpoena, the Individual-1 Subpoenas and the Sports and Entertainment Company Subpoenas.  As set forth below, the subpoenas are procedurally improper, substantively overbroad, and unnecessary.[1]

In terms of procedural defects, the subpoenas at issue are plainly in violation of Rule 17. They require production before trial—indeed, they require produce before a trial date has even been set—but have not been so-ordered or endorsed by the Court.  Accordingly, the Court should quash the subpoenas on this basis alone.

In terms of substantive defects, the subpoenas fail to meet Rule 17's requirements of relevancy, admissibility, and specificity.  The number and breadth of the requests alone shows that these subpoenas are improper "fishing expeditions" intended as a means of illicitly gathering

---

[1] The Government has standing to bring this motion in light of the facial overbreadth of the subpoenas and because representatives of both the Hedge Fund and the Sports and Entertainment Company would be Government witnesses at any trial of this matter, and Individual-1 is a potential witness.  *See, e.g.*, *United States* v. *Giampa*, No 92 Cr. 437 (PKL), 1992 WL 296440, at *1-2 (S.D.N.Y. Oct. 7, 1992) (holding that Government had standing to move to quash subpoena on third party "based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility.'" (quoting *Untied States* v. *Ranieri*, 670 F.2d 702, 712 (7th Cir. 1982)); *accord United States* v. *Nektalov*, No. S2 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004) ("The government seeks to prevent the undue harassment of its witness, a proper purpose for a third-party seeking to quash a subpoena.").

Moreover, even courts that have questioned the Government's standing to move to quash a third-party subpoena have nonetheless found it appropriate to address the Government's objections because of the Court's own responsibility to evaluate the propriety of the subpoena.  *See, e.g.*, *United States* v. *Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002) (despite defendant's assertion that the Government lacked standing to move to quash, the Court addressed the Government's motion because it was "the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)").

discovery.  As discussed above, the Hedge Fund Subpoena contains 15 document requests and the

three Individual-1 Subpoenas each contain more than two dozen requests.  Each of the requests

seeks "any and all" materials on a broad range of topics.  (*See, e.g.*, Indvidual-1 Entity Subpoena,

Document Request 3 (seeking "[a]ny and all Documents and/or Communications . . . between

[Individual-1] and *any other party* relating to" approximately 31 different topics, individuals, and

entities")); Hedge Fund Subpoena Document Requests 1 through 5 (seeking "[a]ny and all

Documents and/or Communications . . . between" (i) the Hedge Fund and (ii) both defendants,

CC-1, Individual-1, or the CC-1 Entity on over 30 different topic areas)).

The number and scope of these requests evidence the improper nature of these subpoenas.

*See United States* v. *Binday*, 908 F. Supp. 2d 485, 491-92 (S.D.N.Y. 2012) ("Binday's proposed

Rule 17 subpoena calls for the production of a vast array of documents (the requests fill eight

single spaced pages) . . . .  This is not a proper use of a pre-trial Rule 17(c) subpoena."); *accord*

*United States* v. *R. Enterprises, Inc.,* 498 U.S. 292, 299 (1991) (under *Nixon,* "a party must make

a reasonably specific request for information that would be both relevant and admissible at trial");

*United States* v. *Cuthbertson,* 630 F.2d 139, 144 (3d Cir. 1980) (explaining that the "test for

enforcement is whether the subpoena constitutes a good faith effort to obtain *identified evidence*

rather than a general 'fishing expedition' that attempts to use the rule as a discovery device")

(emphasis added).  Indeed, for some of the materials, it is difficult to imagine any theory of

admissibility at the trial of Wright and Carton.  (*See, e.g.*, Hedge Fund Subpoena Document

Requests 8 and 9 (requesting "[a]ny and all Documents and/or Communications . . .between You

and [AUSAs Kobre and Quigley].")).  In addition, to the extent Wright is seeking these materials

in the hopes that he can use them to impeach Government witnesses, "a proposed subpoena does not satisfy the *Nixon*-three pronged test if it seeks material that could be at trial only to impeach a witness." *Binday*, 908 F. Supp. 2d at 492.

Moreover, the breadth of the Individual-1 Subpoenas in particular highlights the Government's concerns about the conflict of interest involving one of Wright's attorneys, Jonathan Davidoff, Esq. As discussed at the arraignment in this case, Davidoff is suing Individual-1 on his own behalf and on behalf of other clients in New York State Supreme Court. The broad Individual-1 Subpoenas, at the very least, raise the possibility that Davidoff maybe seeking to obtain materials using Rule 17 subpoenas for the use in his state-court action. Clearly, Rule 17(c) subpoenas, which are governed by a "strict standard" in the context of federal criminal proceedings, were not intended to provide a means of discovery for non-criminal matters occurring in the courts of separate sovereign.

In short, at the least, the subpoenas represent precisely the kind of fishing expedition prohibited under *Nixon* and its progeny. Accordingly, they should be quashed.

Additionally, the subpoenas are improper for yet another reason: Rule 17 does not require third parties to produce materials that the defendant will obtain by other means in advance of trial. *See Binday*, 908 F. Supp. 2d at 492 (declining to issue Rule 17(c) subpoenas because, "to the extent overlap exists [with the Government's discovery materials], the . . . subpoena contemplates an improper use of Rule 17(c), because the documents called for will be produced by other means in advance of trial").

Here, to the extent the subpoenas seek relevant material, much, if not all, of that material will be produced in discovery. *United States* v. *Boyle*, No. 08 Cr. 523 (CM), 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009) (declining to endorse Rule 17 subpoenas because, *inter alia*, "much of what the defendant is looking for with his subpoenas is material that he has or will receive through the discovery process").  The Government has received extensive document productions from a number of the parties subpoenaed and has acquired other documents sought by the subpoenas via other means.  The Government is in the process of producing much of this material in discovery, providing yet another reason these subpoenas are improper.[2]

---

[2] Notably, both at the arraignment in this case on November 8, and in a follow-up email to co-counsel for defendant Wright on November 9, the Government requested that counsel provide a thumb drive to facilitate the initial production of discovery.  Wright's counsel did not provide the Government with a thumb drive until yesterday afternoon, November 16.  The Government anticipates sending the drive back to defendant Wright's counsel today.

**Conclusion**

For the reasons set forth above, the Court should quash the Hedge Fund Subpoena, the Individual-1 Subpoenas, and the Sports and Entertainment Company Subpoena.

In addition, also for the reasons set forth above, Court should stay compliance with any additional Rule 17(c) subpoenas, beyond those specifically identified herein, that defendant Wright has issued without order of the court, pending further briefing on the propriety of those subpoenas.

Dated: New York, New York
        November 17, 2017

                                              Respectfully submitted,

                                              JOON H. KIM
                                              Acting United States Attorney for the
                                              Southern District of New York

                                    By:    _____
                                              Elisha J. Kobre / Brendan F. Quigley
                                              Assistant United States Attorneys
                                              Tel.: (212) 637 2599/2190